# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| DANIEL HARRINGTON, an individual, PAMELLA HARRINGTON, an individual, NIGHTWATCH MARINE, LLC, a Nevada limited liability company,<br><br>    Plaintiffs,<br><br>v.<br><br>DAVID TACKETT, an individual,<br><br>    Defendant. | Case No.: 3:18-cv-00028-WGC<br>Case No.: 3:18-cv-00104-WGC<br><br>**Order**<br><br>Re: Motion to Consolidate<br>ECF No. 56 (3:18-cv-00028-WGC)<br>ECF No. 81 (3:18-cv-00104-WGC) |
| NO. 8 MINE, LLC,<br><br>    Plaintiff,<br>v.<br><br>THE ELJEN GROUP, LLC, ELVEN E. JENNINGS, JACK ELKINS, FRANK LENTE, AND STEVE HARPER,<br><br>    Defendants. | |
| THE ELJEN GROUP, LLC, *et al.*,<br><br>    Counter-Plaintiffs,<br>v.<br><br>NO. 8 MINE, LLC,<br><br>    Counter-Defendant. | |
| THE ELJEN GROUP, LLC, *et al.*,<br><br>    Third Party Plaintiffs,<br>v.<br><br>DAVID TACKETT, ARGENT ASSET GROUP, LLC, and ROBERT HIGGINS,<br><br>    Third Party Defendants. | |

Before the court is the Motion to Consolidate Case No. 3:18-cv-00028-WGC and Case No. 3:18-cv-00104-WGC filed by David Tackett and No. 8 Mine, LLC and The Eljen Group, LLC, Elven E. Jennings, Jack Elkins, Frank Lente, and Steve Harper in both cases. (ECF Nos. 56, 56-1 to 56-5 in 3:18-cv-00028-WGC; ECF Nos. 81, 81-1 to 81-5 in 3:18-cv-00104-WGC.) The plaintiffs in 3:18-cv-00028-WGC, Daniel Harrington, Pamella Harrington and Nightwatch Marine, LLC, filed a limited opposition in both cases. (ECF Nos. 62, 62-1 to 62-5 in 3:18-cv-00028-WGC; ECF Nos. 91, 91-1 to 91-5 in 3:18-cv-104-WGC.) A reply was also filed in both cases. (ECF No. 65 in 3:18-cv-00028-WGC; ECF No. 94 in 3:18-cv-104-WGC.)

# I. BACKGROUND

**A. Parties to the Actions**

The parties in 3:18-cv-00028-WGC are: plaintiffs Daniel Harrington, Pamella Harrington, and Nightwatch Marine, LLC (collectively, the Harringtons), and defendant David Tackett.

The parties in 3:18-cv-00104-WGC are: plaintiff No. 8 Mine, LLC; defendants the Eljen Group, LLC, Elven E. Jennings (collectively Eljen/Jennings), Jack Elkins, Frank Lente, and Steven Harper (collectively Elkins/Lente/Harper) (when referring to Eljen/Jennings and Elkins/Lente/Harper together, the court will refer to them as the Eljen parties); counterclaimants the Eljen parties; counter-defendant No. 8 Mine, LLC; third-party plaintiffs the Eljen parties; and third-party defendants David Tackett, Argent Asset Group, LLC, and Robert Higgins (Higgins is alleged to be the managing member and chief executive of Argent Asset Group, LLC).

Argent Asset Group and Higgins have been served but have not appeared (*see* ECF Nos. 61, 62), and Eljen/Jennings and Elkins/Lente/Harper have not moved for clerk's entry of default as of this time.

///

**B. The 3:18-cv-00028-WGC Case**

The Harringtons allege that they entered into a contract to purchase real and personal property in Crescent Valley, Nevada, from the D.P. Ward Family Trust (Ward Trust) on October 30, 2015. The contract included the sale of certain warehouses located on the real property and approximately 130,000 pounds of turquoise ore that was in the warehouse buildings.

In August of 2017, Tackett contacted the Harringtons about coming to inspect and purchase all of the turquoise ore. When Tackett arrived on August 25, 2017, he claimed that he owned the turquoise ore through a previous purchase. The Harringtons allege that Tackett threatened litigation if they did not sell Tackett the turquoise ore. As a result, the Harringtons orally offered to sell Tackett all of the turquoise ore in exchange for immediate payment of $300,000, and future payments of $20 per pound for any of the turquoise ore Tackett sold. Tackett orally accepted the offer. The Harringtons and Tackett then prepared and signed a short written document memorializing the terms of the oral agreement. The Harringtons claim that immediately after they signed the agreement, Tackett called three semi-trucks to pick up the turquoise ore. The trucks arrived within about five minutes and took 48 sacks of turquoise ore to Tackett's location in Flagstaff, Arizona. Tackett then claimed he could not pay the Harringtons the $300,000 that day because the banks were closed. He asked the Harringtons to meet him the next day at a Wells Fargo bank in Winnemucca, Nevada to pay them the $300,000. Tackett did not meet them, and never paid the $300,000. The only amount paid was $20,000 for the cost of bagging and sorting some of the turquoise ore. The Harringtons assert claims for breach of contract, unjust enrichment, conversion, and fraud and/or intentional misrepresentation. (ECF No. 23 in 3:18-cv-00028-WGC.)

///

///

## C. The 3:18-cv-00104-WGC Case

### 1. No. 8 Mine Allegations

No. 8 Mine alleges that on May 17, 2017, Elkins/Lente/Harper entered into two purchase agreements for 280,000 pounds of turquoise ore from Eljen/Jennings for a total purchase price of $1,500,000. Then, on June 8, 2017, No. 8 Mine and Elkins/Lente/Harper entered into an agreement whereby Elkins/Lente/Harper assigned their rights under the purchase agreement with Eljen/Jennings to No. 8 Mine. On June 16, 2017, No. 8 Mine and Eljen/Jennings entered into two agreements that transferred title to the turquoise to No. 8 Mine. On July 13, 2017, Eljen/Jennings executed a closing agreement providing that upon payment of the $1,500,000 to an account, the purchase price would be deemed paid in full. No. 8 Mine wired $1,250,000 to the bank account, which belonged to Argent Asset Group, LLC, to purchase approximately $1,320,000 worth of silver, which was to be delivered by Argent to Eljen/Jennings. No. 8 Mine paid an additional $188,000 in cash and other metals directly to Eljen/Jennings constituting full payment under the agreement. No. 8 Mine alleges that through no fault of its own, Argent has not yet provided Eljen/Jennings with the total $1,320,000 worth of silver, but has delivered approximately $600,000 worth of silver to Eljen/Jennings.

No. 8 Mine took possession of the turquoise, and it is stored in Flagstaff, Arizona, with the exception of 64,000 pounds of the turquoise, which the parties agreed would be held at a storage facility in Winnemucca, Nevada until Argent delivered the remaining silver owed to Eljen/Jennings.

No. 8 Mine alleges that the Eljen parties acted together to convert the 64,000 pounds of turquoise stored in Winnemucca, Nevada by way of an October 17, 2017 purchase agreement where Eljen/Jennings purported to sell the 64,000 pounds of turquoise to Elkins/Lente/Harper.

4

Then, in December of 2016, the Eljen parties transported the 64,000 pounds of turquoise in Winnemucca, Nevada to New Mexico. Elkins/Lente/Harper subsequently sold 10,000 pounds of that turquoise to a buyer in Quartzite, Arizona, at 20 percent of the actual market value, undercutting the market for No. 8 Mine's sale of the remaining turquoise.

No. 8 Mine asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, conspiracy, intentional interference with prospective economic advantage, unjust enrichment and declaratory relief. (ECF No. 34 in 3:18-cv-00104-WGC.)

**2. The Eljen Parties Allegations**

The Eljen parties allegations can be broken into two parts: (1) allegations regarding the turquoise ore that is the subject of purchase agreements 1 and 2 described in No. 8 Mine's complaint; and (2) allegations regarding an additional 130,000 pounds of turquoise ore that Jennings claims was stolen from him prior to 2009 and was eventually sold to the Harringtons, who in turn sold it to No. 8 Mine/Tackett.

**a. The Turquoise Subject to Purchase Agreements 1 and 2**

The Eljen parties allege that Eljen/Jennings were the original owners of the turquoise that is the subject of this litigation. On May 16, 2017, Eljen/Jennings entered into purchase agreement 1 to sell all the turquoise located in two warehouses (one in Reno, and one in California) to Elkins/Harper/Lente for $1,000,000. That same date, Eljen/Jennings entered into purchase agreement 2 to sell turquoise located in a warehouse in Winnemucca, Nevada to Elkins/Harper/Lente for $500,000. The turquoise was to remain in the warehouses until the purchase price was paid in full. The agreements provided for an initial down payment and monthly payments thereafter, with an option to renew at additional 90-day periods.

5

On June 8, 2017, Elkins/Lente/Harper negotiated with Tackett, on behalf of No. 8 Mine, to assign their interest in purchase agreements 1 and 2 to No. 8 Mine. Pursuant to its terms, the assignment would terminate on the earlier of: (a) No. 8 Mine's failure to make the option payments identified in purchase agreements 1 and 2; (b) No. 8 Mine's failure to enter into a definitive agreement with Eljen/Jennings by August 1, 2017; (c) No. 8 Mine's failure to pay in full the purchase price of the turquoise in purchase agreements 1 and 2 by October 1, 2017, or (d) No. 8 Mine's notice of termination.

In mid-June 2017, Tackett misrepresented to Elkins/Harper/Lente that No. 8 Mine had reached a definitive agreement with Eljen/Jennings, and that it had paid the full purchase price to Eljen/Jennings. Based on these misrepresentations, Elkins/Lente/Harper cooperated with Tackett for Tackett/No. 8 Mine to take possession of the turquoise subject to purchase agreement 1 (from the Reno and California warehouses). Tackett/No. 8 Mine has possession of this turquoise in Flagstaff, Arizona.

At some point, Tackett and Jennings signed a blank closing agreement and payment acknowledgment, where Tackett obtained Jennings' signature and inserted false dates and generated false documentation for an alleged transfer of funds to a TD Bank account in Delaware, which is not Jennings' account. Tackett misrepresented to Jennings that he had acquired silver bars on behalf of Jennings that would be delivered to Jennings by Argent Asset Group (owned by Robert Higgins) in lieu of cash payment.

On July 19, 2017, Tackett/No. 8 Mine delivered 55 bars of silver, 20 gold krugerrands and $64,500 in cash for a total payment of $188,765. On October 28, 2017, Tackett/No. 8 Mine delivered 181 bars of silver to Jennings, with an estimated value of $322,723, to apply to purchase agreement 1, and promised to promptly pay the balance owed. On December 30, 2017, Tackett/No.

8 Mine delivered 45 bars of silver to Jennings with a value of $80,235, to apply to purchase agreement 1 and again promised to promptly pay the remaining balance.

In the meantime, Jennings met with Elkins/Lente/Harper on October 16, 2017, and determined that because Tackett/No. 8 Mine failed to meet the payment deadlines in the assignment agreement, the rights to the purchase agreements reverted to Elkins/Lente/Harper. In early January of 2018, they transferred the turquoise subject to purchase agreement 2 from the warehouse in Winnemucca, Nevada to New Mexico.

### b. The Additional 130,000 pounds of Turquoise

In addition to the turquoise subject to purchase agreements 1 and 2, Jennings possessed a substantial quantity of turquoise that he contends was stolen from his warehouse prior to 2009. The motion to consolidate elaborates that in March of 2005, Fay Ward, Bryan Mason and Jane Mason, doing business as Fox Mining/Silver & Stone, LLC, sold Jennings and his (then-)partner Fournier all useable, treatable No. 8 mine chalk turquoise in burlap bags located in warehouse buildings B and C for $2,000,000 to be paid in installments over eight years. The agreement was amended in 2006 to state that Jennings and Fournier could remove all the turquoise they wanted from the warehouses at $5000 per pound, provided they continued to pay a minimum of $10,000 per month. They contend that they were allowed to sort through the turquoise, take what they wanted, and discard the unsuitable materials which would revert to Fox Mining/Silver & Stone.

When they were sorting through the turquoise, Jennings and Fournier determined that several tons of turquoise in burlap sacks had been unlawfully removed form the warehouse buildings. They suspected the Masons and others working in concert with them were taking sacks of turquoise and hiding them.

Jennings and Fournier filed a lawsuit against Fay Ward and the Ward Trust, the Masons, and others for conversion, fraud and breach of contract—Case No. 3:07-cv-00230-LRH-RAM. On July 1, 2009, District Judge Hicks entered an injunction prohibiting the Masons and persons/entities acting in concert with them from selling or otherwise transacting in No. 8 turquoise, with an acknowledgement from the Masons that they no longer possessed any No. 8 turquoise. Jennings assigned his rights in that litigation to himself and Elkins/Lente/Harper. According to the Eljen parties, Fay Ward testified in her deposition that all of the No. 8 turquoise mined by her deceased husband was in warehouses B and C, and that Jennings and Fournier had the exclusive rights to purchase it.[1]

The Eljen parties contend that Tackett/No. 8 Mine was aware of the injunction. They allege that, contrary to their representations to District Judge Hicks, certain defendants in that litigation retained control over turquoise stolen from Jennings, and several years later they marketed and sold it to persons/entities. The Eljen parties claim that Tackett/No. 8 Mine acquired the turquoise knowing of the injunction and that the turquoise was stolen from Jennings. They assert that Tackett/No. 8 Mine is in possession of at least 130,000 pounds of turquoise subject to the injunction.

///

---

[1] In their response to the motion to consolidate, the Harringtons assert that Jennings and Fournier settled with Fay Ward and the Ward Trust prior to the time the injunction was entered, and the terms of the settlement provided that Jennings and Fournier would remove all the No. 8 turquoise at the warehouses within 90 days; that Ward would retrieve all No. 8 turquoise from the Masons within two weeks and if Jennings and Fournier wanted any, they would pay $2.50 per pound, otherwise it would be surrendered to Ward. A representation was subsequently made in court that the settlement "had been performed," which the Harringtons take to mean that Jennings and Fournier had already removed the turquoise they wanted from the warehouses, and any turquoise left by them belonged to the Ward Trust. The Harringtons contend it was the turquoise that was left in the warehouses by Jennings and Fournier that the Ward Trust then sold to the Harringtons.

### c. Claims

The Eljen parties assert the following claims: declaratory and injunctive relief, unjust enrichment, fraud, breach of contract, violation of the injunction, conversion, elder abuse/deceptive practices, negligent selection and alter ego against No. 8 Mine/Tackett; and breach of contract, deceptive trade practices, and unjust enrichment against Argent Asset Group and Robert Higgins.

## D. Motion to Consolidate

No. 8 Mine/Tackett and the Eljen parties have moved to consolidate Case Nos. 3:18-cv-00028-WGC and 3:18-cv-00104-WGC, arguing that there are common questions of law and fact which justify consolidation. Specifically, they point out that an issue in both cases is the ownership of the 130,000 pounds of turquoise ore that the Harringtons acquired from the Ward Trust in 2015 and sold to Tackett/No. 8 Mine in 2017. While the Harringtons claim that they rightfully acquired the turquoise ore from the Ward Trust, the Eljen parties claim they acquired this same ore from the Ward Trust in 2005 and 2006; that it was stolen from the warehouses prior to 2009; it was subject to the injunction in 3:07-cv-00230-LRH-RAM, but was wrongfully sold. The moving parties contend there is no risk of delaying the trial as no trial has been set in either case; there is no risk of prejudice and confusion because the overlapping issue is common to both lawsuits; and, consolidation will ease the burden on the parties by eliminating duplicative discovery, depositions and motion practice related to claims involving the 130,000 pounds of turquoise.

The Harringtons filed a limited opposition to the motion, arguing that the cases should only be consolidated for the limited purpose of conducting discovery and dispositive motion practice on the issue of ownership of the 130,000 pounds of turquoise ore the Harringtons acquired from the Ward Trust and subsequently sold to Tackett. They contend this is the only issue common to

the two cases, and they should not be required to participate in burdensome and costly discovery on issues that are pertinent to the 3:18-cv-00104-WGC case but unrelated to their action.

At a hearing on June 19, 2019, the court asked the moving parties to address in their reply brief the fact that the Harringtons have demanded a jury in 3:18-cv-00028-WGC, but there is no jury demand in 3:18-cv-00104-WGC. The reply brief acknowledges the problem that would arise with wholesale consolidation of two cases (i.e., for pretrial and trial) under this scenario and have revised their request for consolidation to be for pretrial purposes only. The moving parties' reply brief also acknowledges that the 3:18-cv-00104-WGC case involves many other issues that do not pertain to the Harringtons; however, they nevertheless contend that the cases should be fully consolidated for pretrial purposes. They argue that consolidation does not require the Harringtons to be actively involved in the other disputes between Tackett/No. 8 Mine and the Eljen parties. The moving parties contend that the Harringtons' proposal for limited consolidation will result in duplicate depositions of key witnesses, including Tackett, Jennings, Harper, Elkins, Bill Cook, Paul Sugar, Ernie Montoya, who have information relevant to both disputes.

## **II. DISCUSSION**

**A. Legal Standard**

Federal Rule of Civil Procedure 42 governs consolidation and provides: "If actions before the court involve a common question of law or fact, the court may: (1) joint for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). In addition, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b).

"When ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b).

Under Local Rule 42-1(b), a party may file a motion to consolidate when "it reasonably appears the actions involve common questions of law or fact and consolidation would aid in the efficient and economic disposition of an action."

"The district court has broad discretion under this rule to consolidate cases pending in the same district." *Investors Research Co. v. U.S. Dist. Court for the Central Dist. Of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989) (citations omitted). In determining whether to consolidate, the court "weighs the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause." *Huene v. U.S.*, 743 F.2d 703, 704 (9th Cir. 1984); *Paxonet Communications, Inc. v. TranSwitch Corp.*, 303 F.Supp.2d 1027, 1028 (N.D. Cal. 2003) ("To determine whether to consolidate, a court weighs the interest in judicial convenience against the potential for delay, confusion, and prejudice caused by consolidation.") (citation omitted). The moving party bears the burden of showing consolidation is appropriate. *See In re Nat'l Football Leagues Sunday Ticket Antitrust Litigation*, Case No. ML 15-02668-BRO (JEMx), 2016 WL 6768841, at * 2 (C.D. Cal. May 23, 2016) (citing *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993), *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F.Supp.2d 1052, 1057 (S.D. Cal. 2007)).

**B. Analysis**

Tackett is a party in both cases. The parties agree that the only issue common to both cases is the ownership of the 130,000 pounds of turquoise ore the Harringtons acquired from the Ward Trust in 2015, and then sold to Tackett/No. 8 Mine in 2017, and which the Eljen parties claim was part of the turquoise stolen from the warehouses prior to 2009. A determination of the ownership

of the 130,000 pounds of turquoise ore at issue in both cases seems to be a necessary prerequisite to resolving the Harringtons claims of breach of contract, unjust enrichment, conversion and fraud against Tackett in the 3:18-cv-00028-WGC case, as well as the Eljen parties' claims against Tackett/No. 8 Mine related to the 130,000 pounds of turquoise ore. The 3:18-cv-00104-WGC case involves the additional claims regarding the turquoise ore subject to purchase agreements 1 and 2 that are unrelated to the Harringtons' case.

The parties disagree as to whether the cases should be subject to pretrial consolidation for all purposes—as the moving parties suggest— or, for the limited purpose of conducting discovery and dispositive motions with respect to ownership of the 130,000 pounds of turquoise ore the Harringtons acquired from the Ward Trust in 2015.

The moving parties argue out that if the latter position is adopted by the court, key players who have knowledge relevant to both cases will have to undergo multiple depositions and respond to multiple sets of written discovery. On the other hand, the Harringtons would be joined in pretrial litigation, a great part of which will have no relevance to them. The 3:18-cv-00104-WGC case involves many more allegations and claims, as well as a host of other witnesses that are not pertinent to the Harringtons' dispute. For example, the 3:18-cv-00104-WGC case includes action taken by Argent/Higgins, and the involvement of Clearwater Partners and its purported principal, Chris Clark, who is apparently Tackett's uncle. The alleged involvement of Clearwater Partners and Clark makes relevant another federal lawsuit in Washington involving Clearwater and Tackett.

Discovery regarding these additional issues would likely take substantially more time that it would take to conduct discovery relative to the straight-forward claims asserted in the Harrington action. The moving parties do not discuss how many witness depositions would have to be completed, written discovery propounded and responded to, and how many documents would be

requested and produced with respect to the remaining unrelated issues in the 3:18-cv-00104-WGC case before the Harringtons could proceed with their trial. The court anticipates this discovery would extend well beyond what will be required in the Harrington case.

While it might avoid *some* duplication of effort and expense for the moving parties to consolidate the cases wholesale for pretrial purposes, the prejudice and delay that the Harringtons would endure as a result of wholesale consolidation appears to outweigh any benefit to the moving parties and the court.

Therefore, the court finds that pretrial consolidation of the cases should be limited to determining ownership of the 130,000 pounds of turquoise acquired by the Harringtons from the Ward Trust in 2015: i.e., whether the 130,000 pounds was owned by the Ward Trust when it was conveyed to the Harringtons, or whether it was stolen from the warehouses prior to 2009 and was subject to the injunction entered by Judge Hicks. The court will now further address the precise scope of consolidation.

The Harringtons assert that resolution of this issue would require limited discovery "of a few documents and a few witnesses." They further state that the issue of ownership of the 130,000 pounds of turquoise ore should be decided first "whether through motion practice or a hearing" as it would simplify the remaining issues in each case. They point out that if the issue is resolved in favor of the Ward Trust, there is no reason for the cases to proceed together, and "if that issue were decided in favor of Jennings/Fournier, then the Harrington case would be simple to resolve."

The Harringtons' brief acknowledges that consolidation would encompass "discovery and dispositive motion practice, including motions for summary judgment, and [ ] a possible hearing" solely on this issue. The court agrees that the cases can be consolidated for the limited purpose of conducting discovery on this preliminary issue and for the filing of dispositive motions related to

this issue. The court will conduct a hearing on the dispositive motions, if necessary. If there are disputed issues of material fact that preclude the entry of summary judgment under Rule 56, it appears that there may have to be a jury trial on this preliminary issue, unless the Harringtons stipulate to a waiver of their right to a jury only as to this issue.

With these parameters in mind, the parties will need to submit a stipulated discovery plan and scheduling order outlining the scope of the discovery to be conducted, as well as deadlines for discovery and dispositive motions.

The parties may simultaneously conduct discovery relative to the other issues presented in their respective cases, cooperating to reduce duplicity where possible. The parties can proceed with dispositive motions and trials (if necessary) in their respective cases after a determination has been made as to the ownership of the 130,000 pounds of turquoise ore at issue in both cases.

### **III. CONCLUSION**

The motion to consolidate (ECF No. 56 in 3:18-cv-00028-WGC and ECF No. 81 in 3:18-cv-00104-WGC) is **GRANTED IN PART AND DENIED IN PART**. The motion is granted insofar as there will be pretrial consolidation of the cases solely for the purpose of determining the ownership of the 130,000 pounds of turquoise when it was acquired by the Harringtons from the Ward Trust. The parties may engage in discovery on this limited issue and the. Following discovery, the parties may submit dispositive motions on this limited issue, and a hearing will be held, if necessary. If there are disputed material facts, a joint trial of the common issue may be necessary, and the Harringtons can determine whether they will invoke their right to a jury trial on this limited issue, or waive that right as to this issue only.

Within **14 days** of the date of this Order, the parties shall submit a proposed stipulated discovery plan and scheduling order to govern discovery and dispositive motion practice as to this limited issue only. It should be filed in both cases.

The parties may simultaneously conduct discovery relative to the other issues presented in their respective cases, cooperating to reduce duplicity where possible. The parties can proceed with dispositive motions and trials in their respective cases after a determination has been made as to the ownership of the 130,000 pounds of turquoise ore at issue in both cases. The court recognizes that this may require amendment of the scheduling order deadlines as to the remaining issues in both cases, and suggests the parties meet and confer and submit any stipulated proposals in that regard well in advance of the expiration of any current deadlines. Alternatively, the parties may request a status conference to discuss scheduling in both cases.

**IT IS SO ORDERED**.

DATED: July 11, 2019.

_____
William G. Cobb
United States Magistrate Judge