| | |
|---|---|
| NO. 8 MINE, LLC, | Case No.: 3:18-cv-00104-WGC |
| Plaintiff | **Order** |
| v. | Re: ECF No. 184 |
| THE ELJEN GROUP, LLC, et. al., | |
| Defendants | |

THE ELJEN GROUP, LLC, et. al.

Counter-Plaintiffs

v.

NO. 8 MINE, LLC

Counter-Defendant

THE ELJEN GROUP, et. al.,

Third Party Plaintiffs

v.

DAVID TACKETT, et. al.,

Third Party Defendants

Defendants/Counter-Plaintiffs/Third-Party Plaintiffs the Eljen Group, LLC, Elven E. Jennings, Jack Elkins, Frank Lente and Steve Harper (collectively, the Eljen Parties) move for an award of attorney's fees under: (1) Nevada Revised Statute (NRS) 18.010(2)(b), (2) NRS 41.1395, (3) by contract, as provided in the promissory note executed by No. 8 Mine, LLC in

favor of Jack Elkins and Steve Harper, and (4) Nevada Rule of Civil Procedure 68(f). In addition, they argue that they are entitled to costs under NRS 18.005 and 18.020. (ECF Nos. 184, 184-1 to 184-8.) Tackett filed a belated response (ECF No. 216), and the court exercises its discretion to consider the response. The Eljen Parties filed a reply. (ECF No. 218.)

## I. BACKGROUND

This dispute stems from several agreements to purchase No. 8 turquoise.

On May 7, 2020, the court dismissed No. 8 Mine, LLC's and Tackett's Second Amended Complaint/Counterclaims and struck their answer to the Eljen Parties' pleading as a sanction under Federal Rule of Civil Procedure 37, Local Rule IA 11-8, and the court's inherent power. (ECF No. 160.) No. 8 Mine/Tackett filed a motion seeking reconsideration of that order, which the court denied. (ECF Nos. 169, 174.) The Eljen Parties filed a motion for damages and other relief (ECF Nos. 163-168), and the court issued an order finding Tackett to be the alter ego of No. 8 Mine and entered judgment in favor of the Eljen Parties. (ECF Nos. 176, 177, 178, 179.)[1]

The Eljen Parties now seek an award of attorney's fees under Nevada Revised Statute (NRS)18.010(2)(b), NRS 41.1395, the promissory note entered into with Elkins, Lente and Harper, and Nevada Rule of Civil Procedure 68. They also seek an award of costs under NRS 18.005 and 18.020.

## II. DISCUSSION

Under the "American Rule," litigants generally must pay their own attorney's fees in the absence of a rule, statute, or contract authorizing such award. *Alyeska Pipeline Co. v. Wilderness*

---

[1] The court subsequently granted Tackett's motion for late filing of notice of appeal, and the judgments were vacated and re-entered on July 7, 2021. (ECF Nos. 219, 220, 221, 222.)

*Society,* 421 U.S. 240, 247 (1975); *MRO Comm., Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1280-81 (9th Cir. 1999).

"In an action involving state law claims, [federal courts] apply the law of the forum state to determine whether a party is entitled to attorney's fees, unless it conflicts with a valid federal statute or procedural rule." *MRO Comm.*, 197 F.3d at 1282 (alteration original).

**A. NRS 18.010(2)(b)—The Eljen Parties**

The Eljen Parties seek the recovery of fees in the amount of $155,684.25 under NRS 18.010.

A court may award attorney's fees to the prevailing party when "the court finds that the claim, counterclaim, cross-claim or third-party complaint or defense of the opposing party was brought or maintained without reasonable ground or to harass the prevailing party." NRS 18.010(2)(b).

> It is the intent of the Legislature that the court award attorney's fees pursuant to this paragraph and impose sanctions pursuant to Rule 11 of the Nevada Rules of Civil Procedure in all appropriate situations to punish for and deter frivolous or vexatious claims and defenses because such claims and defenses overburden limited judicial resources, hinder the timely resolution of meritorious claims and increase the costs of engaging in business and providing professional services to the public.

*Id.*

The fact that the claim did not prevail, or even the fact that the claim was determined to be without merit alone is insufficient for a determination that sanctions are warranted. *See Rivero v. Rivero*, 216 P.3d 213, 234, 125 Nev. 410, 441 (2009).

There is no question that when the Eljen Parties obtained dismissal of No. 8 Mine/Tackett's pleadings and the entry of monetary judgments in their favor that they achieved prevailing party status. *See Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589

F.3d 1027, 1030 (9th Cir. 2009). The question then is whether No. 8 Mine/Tackett's pleadings were brought or maintained without reasonable ground or to harass the Eljen Parties.

The Eljen Parties argue that No. 8 Mine/Tackett's claims are premised on the allegation that No. 8 Mine/Tackett paid Mr. Jennings in full for the No. 8 turquoise, but they knew this was not true when they filed their complaint. They point to a December 30, 2017 writing where Tackett said that he would pay Jennings $10,000 per month until he was paid in full pursuant to the agreement to purchase the turquoise for $1.5 million. He said that for the delay on the silver he would pay an extra $200,000 at $2000 per month until paid or whenever half of the turquoise was sold, whichever was sooner. (*Citing* ECF No. 176 at 9, ECF No. 166-3.) This was four weeks before No. 8 Mine filed its complaint on February 2, 2018.

In addition, the Eljen Parties claim that No. 8 Mine/Tackett knew when they filed the complaint that Argent Asset Group had re-wired $230,000 of the purchase money back to Tackett on September 1, 2017, which he used to buy a house in Florida. (*Citing* ECF No. 176 at 16.) Tackett claimed he bought the house for Jennings' benefit. (*Citing* ECF No. 136 at 2-5.)

The Eljen Parties further assert that Tackett was aware that Argent Asset Group delivered to him 181 100-ounce bars of silver with a value over $300,000 that were earmarked for payment to Jennings. Instead of delivering these 181 bars of silver to Jennings, Tackett sold them to third parties and retained the proceeds. (*Citing* ECF No. 176 at 11.)

A finding that a claim or defense was brought or maintained without reasonable ground or to harass the prevailing party must be supported by evidence in the record. *See Semenza v. Caughlin Crafted Homes,* 901 P.2d 684, 687, 111 Nev. 1089, 1095 (1995) (citing *Chowdry v. NLVH, Inc.*, 851 P.2d 459, 464, 109 Nev. 478, 486 (1993)).

Here, the court lacks the evidence necessary to make a finding that No. 8 Mine/Tackett's claims were brought without reasonable grounds or to harass the Eljen Parties. The court struck No. 8 Mine/Tackett's pleadings because of flagrant violations of the court's orders, but that does not translate to a finding that the action was brought in bad faith in the first place. While the Eljen Parties maintain that Tackett knew Jennings had not been paid in full when he filed the lawsuit, the amended complaint alleges that he withheld further payment because he learned that the remainder of the turquoise had been sold, which may or may not have been a valid claim/defense. Most of the facts the Eljen Parties' point to in support of their position that No. 8 Mine/Tackett's claims were without merit are facts that the court deemed admitted by virtue of the sanctions order, and not because they have been proven before the court with evidence.

In sum, the court will not order the payment of attorney's fees under NRS 18.010.

**B. NRS 41.1395—Jennings**

Second, Jennings argues that he is entitled to fees under NRS 41.1395 on his elder law claim because the court found that No. 8 Mine/Tackett acted fraudulently.

"*If it is established by a preponderance of the evidence* that a person who is liable for damages pursuant to this section acted with recklessness, oppression, fraud or malice, the court shall order the person to pay the attorney's fees and costs of the person who initiated the lawsuit." NRS 41.1395(2) (emphasis added).

Here, it was not established by a preponderance of the evidence that Tackett acted with recklessness, oppression, fraud or malice. Instead, the elder abuse claim was determined in Jennings' favor because No. 8 Mine/Tackett's litigation conduct resulted in striking their pleadings and the allegations in Jennings' pleading were taken as true and No. 8 Mine/Tackett's attorney failed to file a response to their request for judgment and damages on this issue.

1    Therefore, the court does not find it appropriate to award attorneys fees under NRS

2 41.1395(2).

3 **C. The Promissory Note—Elkins and Harper**

4    Third, the Eljen Parties argue that the promissory note executed by No. 8 Mine in favor

5 of Elkins, Lente and Harper provides that No. 8 Mine will reimburse them for all legal fees and

6 costs and expenses incurred in collecting or enforcing the Promissory Note.

7    Elkins and Harper[2] contend that they prevailed on their claim for breach of the

8 assignment agreement and promissory note, and so they are entitled to recover their fees and

9 costs. They seek an award of fees for time entries specifically relating to the promissory note, as

10 well as time entries relating to Mr. Tackett's deposition at which the promissory note breach was

11 addressed in the total amount of $8,790.

12    No. 8 Mine signed a promissory note where it promised to pay Elkins, Lente and Harper

13 $1,000,000. The promissory note has a provision stating that No. 8 Mine agrees to reimburse

14 Elkins, Lente and Harper for all legal fees and other costs and expenses incurred in collecting or

15 enforcing this promissory note. Tackett signed the note on behalf of No. 8 Mine, LLC.

16 (ECF No. 164-5.)

17    In the order at ECF No. 176, the court took the allegations of the Eljen Parties' pleadings

18 as true and concluded that Tackett is the alter ego of No. 8 Mine such that joint and several

19 liability is appropriate. The court also found that Elkins, Lente and Harper entered into an

20 assignment agreement assigning their rights in the purchase agreements for the No. 8 turquoise

21 to No. 8 Mine for $1,000,000, and that No. 8 Mine executed a promissory note in the amount of

22

23
_____

[2] The fees and costs are not sought on behalf of Lente, who sold his rights in the turquoise to
Elkins and Harper. (ECF No. 167-3.)

$1,000,000, and that No. 8 Mine/Tackett breached the assignment agreement and promissory note when they failed to pay the remainder due for the assignment of the rights under the first purchase agreement (PA1). (*See* ECF No. 176 at 27-28.)

Therefore, under the terms of the promissory note, it is appropriate to award Elkins and Harper their attorney's fees and costs incurred in enforcing the promissory note.

In his response, Tackett argues that Elkins and Harper caused the breach of the promissory note when they signed purchase agreement three (PA3), which led to this litigation and subsequently the preliminary injunction which prevented Tackett from selling the turquoise to generate funds to pay them. He claims that they acted in bad faith and breached the joint venture agreement. The court already determined, however, that No. 8 Mine/Tackett breached the assignment agreement and promissory note, and Tackett's arguments about the substance of the claim are not properly raised at this time. Tackett poses no argument regarding the reasonableness of the amount of fees requested by Elkins and Harper.

The court has reviewed the declaration of Mr. Carrico, who charged his clients a discounted rate of $190 per hour, and Mr. Anderson (local counsel), who charged hourly rates between $350 and $375, and finds the rates and hours spent to be reasonable. Therefore, Elkins and Harper should be awarded $8,790 in fees attributed to the assignment agreement and promissory note.

**D. Nevada Rule of Civil Procedure 68(f)—the Eljen Parties**

The Eljen Parties seek an award of $85,628.25 under Nevada's offer of judgment rule, Nevada Rule of Civil Procedure 68.

On June 21, 2019, the Eljen Parties' counsel, Mr. Carrico, served an offer of judgment on No. 8 Mine/Tackett's prior counsel, Jeffrey Setness, offering to settle this case for $12,500. The

offer expired 14 days later. That same day, he sent a letter to Mr. Setness advising Mr. Setness of his clients' desire to end the litigation and made an alternative settlement offer whereby the Eljen Parties would accept return of Jennings' trailer in lieu of the $12,500 offer made in the offer of judgment. No. 8 Mine/Tackett rejected the offer of judgment as well as the alternative settlement offer. (Carrico Decl., ECF Nos. 194-2 at 5, 184-4, 184-5.)

Under Nevada Rule of Civil Procedure 68 up to 21 days before trial, "any party may serve an offer in writing to allow judgment to be taken in accordance with its terms and conditions." Nev. R. Civ. P. 68(a). "Unless otherwise specified, an offer made under this rule is an offer to resolve all claims in the action between the parties to the date of the offer, including costs, expenses, interest, and if attorney fees are permitted by law or contract, attorney fees." *Id.*

"If the offer is not accepted within 14 days after service, it will be considered rejected by the offeree and deemed withdrawn by the offeror." Nev. R. Civ. P. 68(e). "If the offeree rejects an offer and fails to obtain a more favorable judgment: …(B) the offeree must pay the offeror's post-offer costs and expenses, including … reasonable attorney fees, if any be allowed, actually incurred by the offeror from the time of the offer." Nev. R. Civ. P. 68(f)(1)(A)-(B).

The Nevada Supreme Court has held that Nevada Rule of Civil Procedure 68 "encompasses a judgment against the offeree." *MRO Comm.*, 197 F.3d at 1281.

In determining whether an award of attorney's fees is appropriate under Rule 68, the district court must weigh several factors:

> (1) whether the plaintiff's claim was brought in good faith;
> (2) whether the defendant's offer of judgment was reasonable and in good faith in both its timing and amount; (3) whether the plaintiff's decision to reject the offer and proceed to trial was *grossly unreasonable* or in bad faith; and (4) whether the fees sought by the offeror are reasonable and justified in amount.

*Beattie v. Thomas,* 668 P.2d 268, 274, 99 Nev. 579, 58-89 (1983) (emphasis added).

In applying the fourth *Beattie* factor, the court must "consider the *Brunzell* factors in determining whether the requested fee amount is reasonable and justified." *MEI-GSR Holdings, LLC v. Peppermill Casinos, Inc.*, 416 P.3d 249, 258, 134 Nev. 235, 245 (2018); *see also Brunzell v. Golden Gate Nat'l Bank*, 455 P.2d 31, 33, 85 Nev. 345, 249 (1969).

The factors considered in *Brunzell* include:

> (1) the qualities of the advocate: his ability, his training, education, experience, professional standing and skill; (2) the character of the work to be done: its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation; (3) the work actually performed by the lawyer: the skill, time and attention given to the work; (4) the result: whether the attorney was successful and what benefits were derived.

*Brunzell*, 455 P.2d at 33 (citations omitted).

In addition, under Nevada Rule of Civil Procedure 54(d), a motion for attorney's fees must be supported by an affidavit of counsel swearing that the fees were actually and necessarily incurred and were reasonable, documentation concerning the amount of fees claimed, and points and authorities addressing the factors to be considered by the court in deciding the motion. Nev. R. Civ. P. 54(d)(2)(B)(iv).

Preliminarily, the Eljen Parties have submitted a declaration from counsel that the fees and costs incurred were reasonable and necessary to litigate this lawsuit. (Anderson Decl., ECF No. 184-3 at 4 ¶ 6.)

The court will now consider the *Beattie* factors. First, as the court discussed above, it cannot conclude that No. 8 Mine/Tackett's claims were brought in bad faith. Therefore, this factor weighs against awarding fees.

Second, the court considers the Eljen Parties' offer of judgment to be reasonable and in good faith as to timing and amount. The Eljen Parties offered to settle this matter for the sum of

9

$12,500 inclusive of interest, costs, attorney's fees, recovery of the turquoise ore or any other relief that could have been claimed. (ECF No. 184-4 at 3.) Considering only the amount of attorney's fees each party would expend in continuing to litigate this case through trial, this offer appears extraordinarily reasonable. Moreover, the court ultimately found that No. 8 Mine/Tackett paid $591,723 toward the $1,000,000 owed for the No. 8 turquoise subject to purchase agreement number one (referred to as PA1), and that the Eljen Group/Jennings were entitled to recover the $408,277 still owed, and Jennings was allowed to recover double damages under NRS 41.1395 for the elder law claim, plus interest. The court also found that No. 8 Mine/Tackett breached the assignment agreement and promissory note with Elkins, Lente, and Harper, which resulted in damages in the amount of $326,667 plus interest. (*See* ECF No. 176.) Considering the potential damages No. 8 Mine/Tackett faced and the actual damages awarded, an offer of judgment in the amount of $12,500 was certainly reasonable. The offer of judgment was made on June 21, 2019. The case was removed to this court on March 6, 2018; therefore, at this point, the parties' positions should have been clear and they would have had sufficient time to evaluate the risks and benefits of litigation. This factor weighs in favor of granting fees.

Third, the court must consider whether No. 8 Mine/Tackett's decision to reject the offer was grossly unreasonable or in bad faith. The court cannot conclude that the decision to reject the offer was made in bad faith; however, considering the amount of damages the Eljen Parties were seeking and the amount it would cost to continue litigating this case through trial, the decision to reject an offer of $12,500 approaches that which could be considered unreasonable, though the court cannot say the decision to reject the offer was *grossly* unreasonable. As such, the court finds this factor to be neutral in terms of whether to grant an award of fees.

1   Finally, the court turns to whether the fees sought are reasonable and justified in amount,

2   which in turn, requires consideration of the *Brunzell* factors. Each of the *Brunzell* factors

3   indicates that the fees are reasonable and justified. First, there is no question about the quality of

4   the advocates. Both Mr. Carrico and Mr. Anderson are well educated, trained and experienced

5   professionals in good standing. Second, the work required in this case was certainly intricate and

6   difficult, particularly given the repeated obstacles presented by No. 8 Mine/Tackett and their

7   attorneys. It was in part due to these obstacles that the case required more time than a case of this

8   nature otherwise would have, and Mr. Carrico's and Mr. Anderson's handling of this matter

9   undoubtedly assisted the Eljen Parties in achieving their successful result. Third, the work

10  performed by Mr. Carrico and Mr. Anderson was exemplary, and was done in a professional

11  manner and with significant attention to detail. Fourth, Mr. Carrico and Mr. Anderson achieved a

12  successful result for their client when they obtained an order striking No. 8 Mine/Tackett's

13  pleadings and sizeable monetary judgments in their clients' favor. Therefore, the fourth *Beattie*

14  factor also weighs in favor of granting fees.

15      In sum, two of the *Beattie* factors weigh clearly in favor of granting fees, while one of the

16  factors weighs against granting fees, and one of the factors is neutral. On balance, the court finds

17  that it is appropriate to award fees under Nevada's offer of judgment rule.

18      The Eljen Parties assert that the fees incurred after the June 21, 2019 offer of judgment

19  amount to $85,628.25. They ask that the court incorporate its prior orders awarding fees in

20  connection with their successful motions to compel as to avoid duplication of fee awards. (*See*

21  ECF No. 173, awarding $2,101.41, and ECF No. 148, awarding $1,721.68.) Tackett provides no

22  argument as to the reasonableness of the amount of fees or the necessity of the time spent by

23  Mr. Carrico and Mr. Anderson on this case post-offer of judgment.

Therefore, the court grants the Eljen Parties' request for fees under Nevada Rule of Civil Procedure 68 in the amount of $85,628.25, and this award shall incorporate the court's previous orders awarding fees on the motions to compel (ECF Nos. 173, 148) as to avoid the duplication of fees awarded.

**E. Costs**

The Eljen Parties note that they already submitted a bill of costs under Federal Rule of Civil Procedure 54, seeking reimbursement of the filing fee ($400), the state court filing fee prior to removal ($303), and the deposition transcript of David Tackett ($1,155), for a total of $1,858. (*See* bill of costs at ECF Nos. 183, 183-1.) The court taxed costs in that amount. (ECF No. 189.) The Eljen Parties now seek an award of additional costs in the amount of $5,745.28 under NRS 18.005 and NRS 18.020.

Under NRS 18.020, "[c]osts must be allowed of course to the prevailing party" after entry of judgment. Although an award of costs is mandated, "the district court still retains discretion when determining the reasonableness of the individual costs to be awarded." *U.S. Design & Constr. Corp. v. Int'l Bhd. Of Elec. Workers, Local 357*, 50 P.3d 170, 173, 118 Nev. 458, 463 (2002). Awarded "costs must be reasonable, necessary, and actually incurred." *Cadle Co. v. Woods & Erickson, LLP*, 345 P.3d 1049, 1054, 131 Nev. 114, 120 (2015). To support an award of costs, justifying documentation must be provided to "demonstrate how such [claimed costs] were necessary to and incurred in the present action." *Cadle*, 345 P.3d at 1054. This means something more than a memorandum of costs. *In re DISH Network Derivative Litig.*, 401 P.3d 1081, 1093, 133 Nev. 438, 452 (2017).

The costs the Eljen Parties request include:

| | | |
|---|---|---|
| Mediator Fees | $2,535.75 | ECF No. 184-6 |
| Travel expenses to Reno for Mediation for Carrico/Elkins/Harper/Lente | $1,132 | ECF No. 184-8 |
| Travel expenses for Tackett's deposition | $371.45 | |
| Westlaw research | $336 | ECF No. 184-3 at 16, 38 |
| Messenger services to Winnemucca for state court filing | $186.95 | ECF No. 184-3 at 38 |
| Messenger services for local filing | $24.49 | ECF No. 184-3 at 16, 25, 26, 28, 34 |
| Filing fee for pro hac vice appearance of Mr. Carrico | $250 | ECF No. 184-3 at, 23-24 |
| Photocopies | $317.46 | ECF No. 184-3 at 12, 37; ECF No. 184-2 at 51-52 |
| Flash drives for production of discovery | $7 | ECF No. 184-2 at 51 |
| Postage | $77.28 | ECF No. 184-3 at 12, 13, 16, 30, 35; ECF No. 184-2 at 51-52 |
| Certified copies of judgments | $36 | ECF No. 184-7 |
| Service of subpoenas | $375 | ECF No. 184-2 at 51-52 |
| Pacer fees to monitor *Harrington v. Tackett* and *Sugar v. Tackett* and Nevada research | $95.90 | ECF No. 184-3 at 12, 16; ECF No. 184-2 at 51 |
| TOTAL: | 5,745.28 | |

NRS 18.005 defines costs as including, among other things, clerk's fees, fees of process servers for delivery of summonses or subpoenas, reasonable costs for telecopies and photocopies and postage, reasonable costs for travel and lodging incurred taking depositions and conducting discovery, and any other reasonable and necessary expense incurred in connection with the action, including reasonable and necessary expenses for computerized services for legal research.

Tackett does not contest the amount, reasonableness or necessity of any of the costs sought by the Eljen Parties.

The court has reviewed the costs requested and supporting documentation and finds the requested costs to be reasonable, necessary and supported with one exception. The Eljen Parties cite their Exhibit A as containing support for the $371.45 in costs for travel to Tackett's deposition; however, there does not appear to documentation supporting this cost in their exhibits, and so the court will not allow the recovery of this amount.

The Eljen Parties' request for costs under NRS 18.020 is granted, but in the amount of $5,373.83 to take into account the $371.45 in travel costs for Tackett's deposition that were unsupported.

### III. CONCLUSION

The Eljen Parties' motion for attorney's fees and costs (ECF No. 184) is **GRANTED IN PART** as follows:

(1) Elkins' and Harper's request for fees under the promissory note is **GRANTED** in the amount of $8,790.

(2) The Eljen Parties' motion for attorney's fees is **GRANTED** as to the request under Nevada Rule of Civil Procedure 68 in the amount of $85,628.25. This award shall incorporate the court's previous orders awarding fees on the motions to compel (ECF Nos. 173, 148) as to avoid the duplication of fees awarded.

(3) The Eljen Parties' request for costs under NRS 18.020 is **GRANTED** in the amount of $5,373.83.

(4) The motion is **DENIED** as to the request for fees under NRS 18.010 and NRS 41.1395.

It is unclear whether the amount sought by Elkins and Harper for breach of the assignment agreement and promissory note is also covered within the fees incurred after the offer of judgment was served. The Eljen Parties shall file a notice within **10 days** of the date of this Order advising the court whether any of the fees awarded to Elkins and Harper are duplicative of those awarded under Nevada Rule of Civil Procedure 68, and if so whether this court's order should be limited to the grant of fees under Rule 68.

**IT IS SO ORDERED**.

Dated: July 14, 2021

_____

William G. Cobb
United States Magistrate Judge